# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**WILLIS A. GLANTON AND
KATHY H. GLANTON,**

**APPELLANTS;**

**v.**                                    **CASE NO:  1:11-CV-00631-WO-LPA**

**RICHARD M. HUTSON, II,
CHAPTER 13 TRUSTEE,**

**APPELLEE.**

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION
### BANKRUPTCY CASE #10-82315

## <u>BRIEF OF APPELLEE</u>

Benjamin E. Lovell
Chapter 13 Office-Durham
302 E. Pettigrew Street, Suite 140
Durham, NC  27702-3613
Attorney for the Appellee
North Carolina State Bar No:  23266
(919) 688-8065 *phone*
blovell@c13dur.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………..ii

STATEMENT OF ISSUE PRESENTED ON APPEAL………………………………1

APPLICABLE STANDARD OF REVIEW…………………………………………2

STATEMENT OF THE CASE………………………………………………………2

STATEMENT OF THE FACTS……………………………………………………..2

ARGUMENT………………………………………………………………………5

     I.      AN OVERVIEW OF THE DISPOSABLE INCOME TEST…………..5

     II.     UNEMPLOYMENT COMPENSATION IS NOT "A BENEFIT RECEIVED UNDER THE SOCIAL SECURITY ACT" AND MUST BE INCLUDED IN CMI......................................................................8

     III.    UNEMPLOYMENT COMPENSATION DERIVED FROM FEDERAL ADVANCES PAID TO THE STATE WHEN THE STATE HAS DEPLETED ITS TRUST ACCOUNT ARE NOT "BENEFITS RECEIVED UNDER THE SOCIAL SECURITY ACT" AND MUST BE INCLUDED IN CMI………………………………………….…...16

CONCLUSION…………………………………………………………………17

i

# TABLE OF AUTHORITIES

**Cases**

Baker v. General Motors Corp., 478 U.S. 621 (1986)..........................11

BedRoc Ltd., LLC v. United States, 541 U.S. 176 (2004).....................9

Carmichael v. Southern Coal & Coke Co., 301 U.S. 495 (1937)..............13

Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548 (1937)..............11,13

Hamilton v. Lanning, 130 S.Ct. 2464 (2010).....................................7

In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006)........................7

In re Baden, 396 B.R. 617 (Bankr. M.D.Pa. 2008)...............8,9,10,14,15,16

In re Compton, 88 B.R. 166 (Bankr. S.D.Ohio 1988)..........................15

In re Hardacre, 338 B.R. 718 (Bankr. N.D.Tex. 2006).........................7

In re Hickman, 104 B.R. 374 (Bankr. D.Colo. 1989)..........................15

In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006)...............................7

In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. 2009)..................8,11,14,15

In re Meredith, 527 F.3d 372 (4th Cir. 2008)...................................2

In re Munger, 370 B.R. 21 (Bankr. D.Mass. 2007).............................9

In re Nance, 2010 WL 2079653 (Bankr. S.D. Ind. 2010).......................8

In re Overby, 2010 WL 3834647 (Bankr. W.D.Mo. 2010)...................8,16

In re Overstreet, 23 B.R. 712 (Bankr. W.D.La. 1982)..........................15,16

In re Robbins, 964 F.2d 342 (4th Cir. 1992)…………………………………..2

In re Rose, 2010 WL 2600591 (Bankr. N.D. Ga. 2010)…………………….8,14

In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio 2007)…………………….9,15

In re Sublett, 895 F.2d 1381 (11th Cir. 1990)…………………………………..2

In re Washington, 438 B.R. 348 (N.D. Ala. 2010)………………….....8,14

In re Winkles, 2010 WL 2680895 (Bankr. S.D.Ill. 2010)…………………..8

Jenkins v. Bowling, 691 F.2d 1225 (7th Cir. 1982)……………………………12

Maney v. Kagenveama, 541 F.3d 868 (9th Cir. 2008)……………………….6,7

MidAtlantic Nat. v. N.J. Dept. for Environmental Prot., 474 U.S. 494 (1986).15

Nat'l R. Passenger Corp. v. Nat'l Assn. of R. Passengers, 414 U.S. 453 (1974).9

N.Y. Telephone Co. v. N.Y. Dept. of Labor, 440 U.S. 519 (1979)…………..11

Ohio Bureau of Empl. Services v. Hodory, 431 U.S. 471 (1977)……………..12

Safety Kleen, Inc. v. Wyche, 274 F.3d 846 (4th Cir. 2001)……………………2

St. Martin Evang. Lutheran Church v. South Dakota, 451 U.S. 772(1981)…..11

## Statutes

11 U.S.C. §101(10A)……………………………………………………...6,7

11 U.S.C. §522(d)(10)(A)……………………………………………………14,15

iii

11 U.S.C. §1325(b)(1)(B)……………………………………………1,5,6

11 U.S.C. §1325(b)(2)……………………………………………6

11 U.S.C. §1325(b)(4)……………………………………………1

26 U.S.C. §§3301-3311……………………………………………11,12

28 U.S.C. §158……………………………………………2

42 U.S.C. §1104(f)……………………………………………12

42 U.S.C. §503(a)(5)……………………………………………12

42 U.S.C. §1101(c)(1)(A)……………………………………...12

42 U.S.C. §§501-504……………………………………………12

42 U.S.C. §1321(a)(1)……………………………………………16

N.C. Gen. Stat. §96-3 (2009)……………………………………13

N.C. Gen. Stat. §96-6 (2009)……………………………………17

N.C. Gen. Stat. §96-9 (2009)……………………………………13

N.C. Gen. Stat. §96-13 (2009)……………………………………13

**Legislative Materials and Other Authorities**

H.R. Rep. No. 109-31(I), at 2-3, 115 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89, 177-78……………………………………………10

151 Cong. Rec. S2470 (March 10, 2005)……………………………10

David Gray Carlson, <u>Means Testing: the Failed Bankruptcy Revolution of 2005</u>, 15 Am. Bankr. Inst. L. Rev. 223 (Spring 2007)……………………………..9

Eugene R. Wedoff, <u>Means Testing in the New §707(b)</u>, 79 Am. Bankr. L.J. 231 (Spring 2005)……………………………………………………………………9

v

NOW COMES Richard M. Hutson, II, Chapter 13 Trustee and the Appellee herein, by and through counsel undersigned, and respectfully submits this brief in reply of Appellant's Brief submitted on August 25, 2011 and requests that the Order entered on June 24, 2011 by the Honorable William L. Stocks, United States Bankruptcy Judge for the Middle District of North Carolina, be affirmed.

## STATEMENT OF ISSUE PRESENTED ON APPEAL

1.  Whether the Bankruptcy Court erred in finding that unemployment compensation benefits are not a benefit "received under" the Social Security Act.

2.  Whether the Bankruptcy Court erred in finding that unemployment compensation benefits, derived from federal advances made to the North Carolina Unemployment Insurance Fund under Title XII of the Social Security Act, are not a benefit "received under" the Social Security Act.

3.  Whether the Bankruptcy Court erred in finding that the Debtors' plan, by excluding unemployment benefits from a calculation of current monthly income, failed to comply with the disposable income requirements of 11 U.S.C. §1325(b)(1)(B) and the applicable commitment period requirements of 11 U.S.C. §1325(b)(4).

1

## APPLICABLE STANDARD OF REVIEW

Pursuant to 28 U.S.C. §158, the United States District Court functions as an appellate court in reviewing a bankruptcy court's decisions. In re Sublett, 895 F.2d 1381, 1383 (11th Cir. 1990). The Bankruptcy Court's "findings of fact" shall not be set aside unless clearly erroneous and legal conclusions are reviewed *de novo*. Fed. Rule Bankr. Proc. 8013; see In re Meredith, 527 F.3d 372, 375 (4th Cir. 2008); Safety Kleen, Inc. v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001). Decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion. See In re Robbins, 964 F.2d 342, 345 (4th Cir. 1992).

## STATEMENT OF THE CASE

The Appellee is satisfied with the Statement of the Case presented in the Appellant's Brief and will, therefore, defer to said statement pursuant to Rule 8010(a)(2) of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF THE FACTS

Mr. and Mrs. Glanton (" the Debtors") filed for relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of North Carolina on December 29, 2010 ("the Petition Date"). The Debtors have proposed a plan with payments of $193.00 per month for a period of

2

at least 36 months (See "Notice to Creditors and Proposed Chapter 13 Plan, Docket No. 12). The Debtors have proposed no dividend to general unsecured creditors, to whom they owe approximately $147,778.87 according to Schedule "F" (Bankruptcy Docket No. 1 at p. 49).

The Debtors are married and live together with their 15-year old daughter. (Schedule I, Bankruptcy Docket No. 1 at p. 52). The schedules reflect that Mr. Glanton is unemployed and receiving unemployment compensation of approximately $1,200.33 per month. (Schedule I, Bankruptcy Docket No. 1 at p. 52). At the time the Chapter 13 petition was filed, Mrs. Glanton worked as a financial analyst at ABB, Inc. earning approximately $3,237.96 per month of gross income. (Schedule I, Bankruptcy Docket No. 1 at p. 52). According to Official Form B22C ("Form B22C"), the Debtors have current monthly income ("CMI") of approximately $3,780.94 per month or $45,371.28 annually, which is less than the applicable median income for a household of three for the state of North Carolina. (Bankruptcy Docket No. 1 at p. 57). The Debtors do not include Mr. Glanton's monthly unemployment income as part of their CMI in Form B22C; however, they do list it on line #8 of Form B22C as a benefit received under the Social Security Act. (Bankruptcy Docket No. 1, p. 56 at line 8).

On February 14, 2011, the Chapter 13 Trustee objected to confirmation of the Debtors' plan pursuant to 11 U.S.C. §1325(b) arguing that unemployment income

3

is based upon lost wages and is payable pursuant to state law and, thus, is not a "benefit received under the Social Security Act" and must be included in the computation of CMI. (Bankruptcy Court Docket No. 14). The Trustee further argued that if the unemployment income were included in CMI, the Debtors would have CMI above the state median, thereby necessitating a 60 month applicable commitment period for their Chapter 13 plan and completion in full of Form B22C.

The parties submitted briefs in support of their positions (Bankruptcy Court Docket Nos. 25 and 26), and a confirmation hearing was held in Durham, North Carolina on June 16, 2011, presided over by the Honorable William L. Stocks, United States Bankruptcy Judge. On June 24, 2011, Judge Stocks entered an Order Denying Confirmation of Plan (Bankruptcy Court Docket No. 28). On July 7, 2011, Judge Stocks issued a Memorandum Opinion setting forth his findings and conclusions, determining that unemployment compensation is not a benefit received under the Social Security Act and further finding that the Debtors incorrectly excluded unemployment compensation from the calculation of CMI on Form B22C. (Bankruptcy Court Docket No. 32).

Case 1:11-cv-00631-WO -LPA   Document 8   Filed 09/08/11   Page 10 of 25

## ARGUMENT

One of the primary tests for whether a proposed Chapter 13 plan shall be confirmed is the projected disposable income test found in 11 U.S.C. §1325(b). Prior to October 17, 2005, the test involved a straightforward look at a debtor's budget, found in Schedules I and J, to determine the amount of excess monthly income a debtor could devote to his or her plan. On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was enacted and the issue of how to determine a debtor's disposable income in Chapter 13 cases became exceedingly complex and extensively litigated, involving new terminology, such as "current monthly income", and new forms, such as the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C").

## I.     AN OVERVIEW OF THE DISPOSABLE INCOME TEST

After the passage of BAPCPA, Section 1325(b) now provides as follows:

> (b)(1)   If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-...

> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan. (Emphasis added). 11 U.S.C. §1325(b)(1).

5

In subsection (2) of Section 1325(b), Congress provides a definition for "disposable income" that subtracts the debtor's reasonably necessary expenses from "current monthly income". 11 U.S.C. §1325(b)(2). Prior to the passage of BAPCPA, the term "current monthly income" did not exist. Current monthly income ("CMI") is defined in Section 101 as follows:

> (A) the average monthly income from *all sources* that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on-
>
> (i)   the last day of the calendar month immediately preceding the date of the commencement of the case…; and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents…but excludes *benefits received under the Social Security Act*, payments to victims of war crimes or cirmes against humanity…, and payments to victims of international terrorism…or domestic terrorism… (Emphasis added).
> 11 U.S.C. §101(10A).

Interestingly, the definition of current monthly income does not provide for income that is "current" at all, but rather is a historical average of income for the six months preceding the filing of the Chapter 13 case. Many courts have wrestled with reconciling the definition of "disposable income" found in 11 U.S.C. §1325(b)(2), which includes the backward-looking CMI as its starting point, with the concept of "projected disposable income" found in 11 U.S.C. §1325(b)(1)(B), which appears to be a "forward-looking" concept. Maney v. Kagenveama, 541

F.3d 868, 872-75 (9th Cir. 2008), <u>In re Alexander</u>, 344 B.R. 742 (Bankr. E.D.N.C. 2006); <u>In re Hardacre</u>, 338 B.R. 718 (Bankr. N.D.Tex. 2006); <u>In re Jass</u>, 340 B.R. 411 (Bankr. D. Utah 2006). On June 7, 2010, the United States Supreme Court addressed this issue in <u>Hamilton v. Lanning</u>, 130 S. Ct. 2464, 2469-78 (2010), holding that bankruptcy courts should begin with a calculation of disposable income using CMI, but may account for changes in a debtor's income or expenses that are "known or virtually certain" at the time of confirmation. <u>Lanning</u> at 77-78.

Fortunately, this Court is not being called upon to address the broader issues concerning the disposable income test found in <u>Lanning</u>, but rather must address the narrow issue of whether unemployment compensation received by the Debtors during the 6-month period prior to the filing of the Chapter 13 case should be included in CMI calculated on Form B22C, thus used to determine disposable income under 11 U.S.C. §1325(b). The Appellants rely on the phrase "excludes benefits received under the Social Security Act" in 11 U.S.C. §101(10A) to assert that their computation of CMI should exclude unemployment benefits. The Appellee disagrees and supports Judge Stocks' interpretation of CMI which includes unemployment income.

## II. UNEMPLOYMENT COMPENSATION IS NOT "A BENEFIT RECEIVED UNDER THE SOCIAL SECURITY ACT" AND MUST BE INCLUDED IN CMI.

The Appellee will concede that the issue before this Court, while appearing straightforward, is a complicated issue that has divided both courts and commentators due to the federal-state cooperative nature of the employment compensation system. As observed by Judge Perkins in In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. 2009), whether unemployment compensation are benefits received under the Social Security Act ("SSA") is "a surprising difficult question" as unemployment insurance, although paid through state-sponsored programs, does have roots in the SSA and other federal legislation. Kucharz at 637.

The clear majority of courts have held that unemployment benefits are not benefits received under the SSA and should be included in the calculation of CMI. In re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008); In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. 2009); In re Overby, 2010 WL 3834647 (Bankr. W.D. Mo. 2010); In re Washington, 438 B.R. 348 (N.D. Ala. 2010); In re Winkles, 2010 WL 2680895 (Bankr. S.D. Ill. 2010); In re Nance, 2010 WL 2079653 (Bankr. S.D. Ind. 2010); In re Rose, 2010 WL 2600591 (Bankr. N.D. Ga. 2010). Only two decisions, both in a Chapter 7 context, have held that unemployment compensation is a benefit received under the SSA and, therefore, excluded from the definition of

CMI. <u>In re Sorrell</u>, 359 B.R. 167 (Bankr. S.D. Ohio 2007); <u>In re Munger</u>, 370 B.R. 21 (Bankr. D. Mass. 2007). The Appellee argues that the greater weight of case authority favors including unemployment income in the calculation of CMI.

Commentators also disagree as to whether unemployment compensation should be included in the computation of CMI. Judge Wedoff opines that including unemployment compensation as a benefit "received under the SSA" is a strained interpretation. Eugene R. Wedoff, <u>Means Testing in the New §707(b)</u>, 79 Am. Bankr.L.J. 231, 247 (Spring, 2005). Judge Wedoff contends that unemployed individuals do not receive "benefits under the SSA," but rather under programs adopted by their states." <u>Id.</u> at 247. Other commentators have favored the Debtors' argument that unemployment compensation is a benefit received under the SSA. David Gray Carlson, <u>Means Testing: the Failed Bankruptcy Revolution of 2005</u>, 15 Am. Bankr. Inst. L. Rev. 223, 262-63 (Spring 2007).

In proceeding to interpret the language in a statute, such as 11 U.S.C. §101(10A), the court must use the statute's plain meaning if it is unambiguous on its face. <u>BedRoc Ltd., LLC v. United States</u>, 541 U.S. 176, 183, 124 S.Ct. 1587 (2004). However, when the provisions of a statute are ambiguous and subject to various meanings, as is evident in this case, the court may look beyond the plain language to determine the intent of Congress in enacting the statute. <u>Baden</u> at 621 (citing <u>National R. Passenger Corp. v. National Association of R. Passengers</u>, 414

U.S. 453, 458, 94 S.Ct. 690 (1974)).    In <u>Baden</u>, the court observed that Congress had two primary concerns in enacting BAPCPA: (1) Protecting the bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay, and (2) protecting education and retirement savings from being drained by creditors.  <u>See</u> <u>Baden</u> 396 B.R. at 622; <u>see</u> <u>also</u> H.R. Rep. No. 109-31(I), at 2-3, 115 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89, 177-78; 151 Cong. Rec. S2470 (March 10, 2005).

The exclusion of unemployment compensation from the calculation of CMI satisfies both concerns.    <u>Baden</u> at 622.    The purpose of unemployment compensation is to provide funds to temporarily replace lost wages so that the unemployed worker can subsist until new employment can be found.  By allowing the unemployed debtor to retain excess funds while failing to pay their bills, the position espoused by the Appellants runs contrary to Congress' goal of preventing abuse by those who have the means to pay a portion of their bills.  Additionally, excluding unemployment from CMI does not further the goal of protecting retirement savings. <u>Id.</u>

Furthermore, in determining whether unemployment benefits are "benefits received under the Social Security Act", this Court must examine some of the history surrounding unemployment insurance programs.  The Appellee stipulates that unemployment insurance, while paid through state-sponsored programs, has

roots in federal legislation, including the SSA. The SSA provided the states with financial incentives to adopt laws to pay involuntarily unemployed citizens. In re Kucharz, 418 B.R. 635, 637 (Bankr. C.D. Ill. 2009). Congress rejected the alternative of a uniform national unemployment insurance system, instead preferring to preserve the autonomy of the states to adopt their own systems. N.Y. Telephone Co. v. N.Y. State Dept. of Labor, 440 U.S. 519, 541 n. 36 (1979). The states were given a wide range of judgment and broad freedom to set up the type of unemployment compensation system they preferred. Kucharz at 638 (citing Baker v. General Motors Corp., 478 U.S. 621,633, 106 S.Ct. 3129, 3136 (1986)).

The Federal Unemployment Tax Act ("FUTA"), formerly Title IX of the Social Security Act, now codified in the Internal Revenue Code at 26 U.S.C. §§3301-3311, imposes an excise tax on wages paid by employers, but allows a credit of up to 90% of the tax for the employer's contributions to a state's unemployment compensation fund. All 50 states have enacted unemployment insurance laws implementing the federal mandatory minimum standards of coverage. St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 775 n.3, 101 S.Ct. 2142, 2144 n.3 (1981). The conditions attached to the allowance of the tax credit are designed to assure that each state's program contains basic standard provisions. Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 575, 57 S.Ct. 883, 885 (1937).

The states are required to invest the employer contributions with the U.S. Treasury to protect against loss. Id. The states' funds are deposited and held in an Unemployment Trust Fund. 42 U.S.C. §1104. The funds are remitted to the states upon request on an as-needed basis. 42 U.S.C. §1104(f). A state must then use the funds solely for the payment of unemployment compensation benefits, exclusive of expenses of administration. 42 U.S.C. §503(a)(5); 26 U.S.C. §3304(a)(4). A state's expenses for operating an unemployment insurance system are paid for through federal grants. 42 U.S.C. §§1101(c)(1)(A) and 501-504. By providing for federal financing of the administrative expenses of state-created and managed unemployment insurance systems, Title III of the SSA intended to induce the states to adopt programs that would achieve the objectives set forth under federal law. Jenkins v. Bowling, 691 F.2d 1225, 1229 (7th Cir. 1982).

Rather than creating a uniform federal scheme for unemployment compensation, the states were encouraged to create and run their own programs, with federal involvement existing primarily through tax incentives. Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 483, 97 S.Ct. 1898 (1977). Therefore, unemployment insurance claims are submitted to, evaluated and paid or denied by state officials implementing state law. Kucharz at 639. As with all other states, North Carolina has enacted an unemployment compensation law. See N.C. Gen. Stat. §96 (2009). The North Carolina General Assembly created the

Employment Security Commission of North Carolina to oversee the unemployment system. N.C. Gen. Stat. §96-3 (2009). Employers are required to make contributions into a fund, the Unemployment Insurance Fund, from which benefits can be paid to unemployed workers. N.C. Gen. Stat. §96-9 (2009). Conditions for benefit eligibility are determined under state law. N.C. Gen. Stat. §96-13 (2009).

Shortly after the passage of the SSA, the Supreme Court had occasion to directly address the interrelationship between the states and the federal government with respect to unemployment compensation in Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883 (1937). The constitutionality of the unemployment system was challenged as invading state sovereignty. The Court held that SSA's purpose to encourage states to adopt their own unemployment insurance programs was a permissible inducement of state action and not an unconstitutional coercion. Id. at 893-896. Because the states were *free to adopt or not adopt* an unemployment insurance program, and retained administrative control over their own programs, they were not deemed to have surrendered sovereign powers to the federal government. Id. (emphasis added); see also Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868 (1937).

Accordingly, unemployment benefits are paid to the Appellants as determined under North Carolina law and any regulations promulgated thereunder. While the

13

Appellee can agree that unemployment compensation is related to the SSA, for a benefit to be "received under" the SSA, it is not sufficient that the benefit be merely "related to" or "envisioned by" or "induced by" the SSA. <u>Kucharz</u> at 641. Most courts that have examined the text of the phrase "benefits received under the SSA" have concluded that it means Social Security benefits, which has a common understanding that does not include unemployment benefits. <u>In re Washington</u>, 438 B.R. 348, 351 (N.D. Ala. 2010); <u>see</u> <u>In re Rose</u>, 2010 WL 2600591 (Bankr. N.D. Ga. 2010) (stating that the determinative factor for this Court is the Court's view that Congress most likely used the term, "benefits received under the Social Security Act," in the same way that people ordinarily think of Social Security benefits…as referring to retirement, disability, and other payments that come through…the Social Security Administration and that is called "Social Security").

Indeed, Congress appears to draw a distinction between unemployment benefits and social security benefits in other parts of the Bankruptcy Code. <u>See</u> 11 U.S.C. §522(d)(10)(A); <u>see also</u> <u>In re Baden</u>, 396 B.R. 617, 621 (M.D. Pa. 2008) (stating that Congress' intent was that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government). The Appellants argue that the phrase "social security benefit" found in §522(d)(10)(A) should be read to mean something more narrow than "a benefit received under the

14

Social Security Act" as found in 11 U.S.C. §101(10A). See <u>In re Sorrell</u>, 359 B.R. at 183. The Appellee agrees with the <u>Baden</u> and <u>Kucharz</u> courts that §522(d)(10)(A) is an example of Congressional intent to differentiate between unemployment income and income received "under the SSA." As stated by Judge Perkins in <u>Kucharz</u>:

> "The theory behind CMI is premised upon the assumption that their (debtors') recent earnings history is a valid predictor of how much debtors are likely to earn in the future. Since unemployment benefits replace lost wages, including those benefits in the CMI calculation is consistent with the predictive purpose of the provision...In this regard, unemployment compensation is unlike old age, survivors and disability benefits received under the SSA...None of those excluded benefits is a temporary substitute for lost wages." <u>Kucharz</u> at 642.

As a further point, an interpretation which excludes unemployment compensation from the definition of CMI would be inconsistent with a recognized principle of statutory construction, namely, that a court should not assume Congress, in enacting a statute, intended a deviation from established applications of judicial interpretation unless the statute itself effects such a change with specificity. <u>Baden</u> at 623 (citing <u>Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494, 501, 106 S.Ct. 755, 759 (1986)). It is widely accepted that the pre-BAPCPA definition of income included unemployment income. <u>In re Hickman</u>, 104 B.R. 374, 377 (Bankr. D. Colo. 1989); <u>In re Compton</u>, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988); <u>In re Overstreet</u>, 23

15

B.R. 712, 713-14 (Bankr. W.D. La. 1982). Had Congress intended CMI to exclude unemployment compensation, it would have said so with greater clarity. <u>In re Overby</u>, 2010 WL 3834647 (Bankr. W.D. Mo. 2010, p. 4); <u>Baden</u> at 623.

## III. UNEMPLOYMENT COMPENSATION DERIVED FROM FEDERAL ADVANCES PAID TO THE STATE WHEN THE STATE HAS DEPLETED ITS TRUST ACCOUNT ARE NOT "BENEFITS RECEIVED UNDER THE SSA" AND MUST BE INCLUDED IN CMI.

In his Memorandum Opinion, Judge Stocks addressed a novel argument by the Debtors that is also being made on appeal. The Debtors contend that, because North Carolina's insurance fund has been insolvent since February of 2009, the state has had to take federal loans pursuant to Title XII of the Social Security Act to cover ongoing unemployment benefits, including the benefits paid to the male Debtor, thus the benefits are received "under the SSA". 42 U.S.C. §1321(a)(1). The Bankruptcy Court disagreed with the Debtors' position.

Section 1321(a)(1) states that "advances shall be made to the States from the Federal unemployment account in the Unemployment Trust Fund as provided in this section, and ***shall be repayable***, with interest to the extent provided in section 1202(b)..." 42 U.S.C. §1321(a)(1) (emphasis added). The Appellee concedes that the North Carolina unemployment insurance fund has been insolvent and that the benefits received by the male Debtor have been comprised of funds loaned to the state of North Carolina under Title XII of the SSA. However, the Appellants

16

would equate a state borrowing from the Unemployment Trust Fund following insolvency with a "federalization" of unemployment benefits, which is an inaccurate characterization. First of all, the state gains possession of the funds prior to disbursement to the individual, which effectively strips them of any character as SSA funds. Secondly, these funds loaned to the state under Title XII are "comingled and undivided" with all other funds received by the state, including non-Social Security Act payments under the Federal-State Extended Unemployment Compensation Act of 1970 and state tax collections. N.C. Gen. Stat. §96-6 (2009). Thirdly, states have multiple options to address insolvency of the unemployment trust fund, including borrowing from other sources, increasing taxes, and reducing benefits. Finally, in every case, the state of North Carolina retains control over its program. If the state chooses to borrow from the federal government under a privilege granted to it by the SSA, that choice by the state does not transform benefit payments made by the state into "benefits received under the SSA".

## CONCLUSION

For the foregoing reasons and rationale above, the Appellee contends that the Bankruptcy Court committed no error in denying confirmation of the Debtors' Chapter 13 plan as the Debtors' CMI must include unemployment benefits

17

received by Mr. Glanton. Accordingly, the Appellee respectfully requests that the

Bankruptcy Court's order be affirmed.


Respectfully submitted this 8th day of September, 2011.

> s/Benjamin E. Lovell
> Benjamin E. Lovell
> Attorney for Appellee
> P.O. Box 3613
> Durham, N.C. 27703
> State Bar No. 23266

## CERTIFICATE OF SERVICE

I, Benjamin Eric Lovell, certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than eighteen (18) years of age and that on September 8, 2011, I served copies of the foregoing Brief of Appellee by electronic service and/or first class mail upon the following parties in interest:


Koury L. Hicks, Esq.
Attorney for the Appellants


Michael West
U.S. Bankruptcy Administrator


Willis and Kathy Glanton
611 Beaver Dam Run
Durham, NC  27703

s/Benjamin E. Lovell
Benjamin E. Lovell
Attorney for Appellee
P.O. Box 3613
Durham, N.C. 27703
State Bar No. 23266
